### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

JAN 2 6 2024

Nathan Ochsner, **Clerk of Court**

**ALEXANDER MOSKOVITS,**

      **Plaintiff,**

v.                      **CASE NO. 23-CV-03746**

**MCGLINCHEY STAFFORD PLLC,**
**NICOLAS R. O'CONNER, AND**
**MATT D. MANNING,**

      **Defendants.**

_____/

## VERIFIED RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Alexander Moskovits ("Plaintiff"), proceeding *pro se*, hereby files his verified response to the motion to dismiss his verified complaint filed by the defendants McGlinchey Stafford, PLLC ("McGlinchey"), Nicholas R. O'Conner ("O'Conner"), and Matt D. Manning ("Manning") (altogether, the "Defendants")

## I. INTRODUCTION

Plaintiff brings this independent action seeking due justice that defendants' "fraud on the court" scheme denied him in his previous lawsuit filed in this Court entitled *Alexander Moskovits v. Mercedes-Benz Financial Services USA LLC, et al.*, Case No. 21-CV-02260. Therein, in relevant part, *pro se* Plaintiff sought statutory treble damages pursuant to the Texas Deceptive Trade Practices Act (DTPA) since Mercedes-Benz Financial Services USA LLC (MBFS) and its agents deprived him

1

of due judicial process in violation of Tex.Bus.&Com § 9.609, UCC Cmt. 3 ("this Section does ***not*** authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer") (emphasis added), because MBFS conducted a repossession that utilized the help of law enforcement officers. Defendants defended MBFS in the prior Texas lawsuit by ***fraudulently concealing*** what counsel for Mercedes-Benz of Miami ***revealed*** in a federal action against the dealer who sold the car.[1] Defendants misstate that Plaintiff sought the same [treble] damages for different wrongs alleged in his Florida filings in state and federal court.

Plaintiff submits that Defendants are liable for the statutory trebles damages (3 x $28,157.94), which he should have recovered in the previous Texas lawsuit, but for defendants' fraud. Plaintiff bases his claim of ***fraudulent concealment*** on the written representation made to the Miami federal district court that the car had been "somehow lost by Plaintiff in a robbery in Mexico." *See* Complaint, Exhibit B.

---

[1] Plaintiff sued dealer Mercedes-Benz of Miami for a conspiracy against rights, fraud at inception, and invasion of privacy, *inter alia*, for ***different wrongs*** committed at the time of the purchase for a 50% down payment of $19,000 (nineteen thousand), including delivery of a vehicle identical to the one bought, but with the wrong VIN, for a pre-announced road trip to Mexico, a switch reported to the FBI and corrected by the dealer on the same date of the car purchase contract signed with MBFS at the dealer. *See Moskovits v. L.P. Evans Motors WPB, Inc. d/b/a Mercedes-Benz of Miami, et al.*; Case No. 2018-015388-CA-01 in the 11th Judicial Circuit of Miami-Dade County, Florida (action currently remains under stay pending arbitration); *Moskovits v. L.P. Evans Motors WPB, Inc. d/b/a Mercedes- Benz of Miami, et al.*; Case No. 3D2020-0408, Third District Court of Appeals (affirming the stay pending arbitration); *Moskovits v. L.P. Evans Motors WPB, Inc. d/b/a Mercedes-Benz of Miami, et al..*; Case No. 1:21-cv-20122 (S.D.Fla.) (seeking to enforce Constitutional right to court litigation rather than arbitration of civil rights violations and a remedy against the elected county judge and counsel for interjecting his ancient drug case, *inter alia*. The case was dismissed, ***but Mercedes-Benz of Miami counsel there revealed what has been fraudulently concealed by the defendants sued here for their fraud on the court scheme followed by "defamation per se."***

2

Plaintiff construes the written representation to the federal district court as evidence probative of the information provided by MBFS, through its agents and affiliates, to law enforcement on both sides of the international border to get the ***legally required pre-authorization of the international export-import repossession*** of the car left by Plaintiff at an official Mercedes-Benz dealer in VeraCruz, Mexico for paid repairs. ***The defendants sued here knew or should have known of the concealed evidence*** that the Mercedes-Benz data system reported the car as "lost by Plaintiff in a robbery in Mexico." Plaintiff submits that the representation made to the Miami federal court supports his assertion that MBFS violated 18 U.S.C. § 1001 and Texas P.C. § 37.09, and the defendants ***fraudulently concealed*** their clients' crimes.

Plaintiff also brings an action against the defendants for "defamation *per se*" in an e-mail, ***sent to Plaintiff outside of litigation***, from McGlinchey acting through O'Conner, copying Manning and a McGlinchey staff member, wherein ***a statement expressly based on the existence of facts, i.e., Plaintiff's ancient drug conviction,*** conveyed an imputation of a loathsome mental illness caused by criminal drug use. The statement was made with knowledge of its falsity, or with a reckless disregard for its truth or falsity, as "the truth" was readily available in the federal court record, *see USA v. Moskovits*, 1987-CR-284 (E.D.Pa.), showing that the government sought a harsher sentence to punish Plaintiff more severely because he did ***not*** use any drugs and that Plaintiff was neither "expelled" nor charged with conspiring to distribute or

with distributing "nearly 50 kilograms of cocaine… through the university" despite the *false hearsay* defendants found in articles. Defendants added insult to the injury caused by their fraud inside of the litigation. Plaintiff will first address the damaging insult - the defamation *per se* – that occurred on March 11, 2023 *outside of litigation*.

## II. ARGUMENT

### *THE FALSE STATEMENT IMPUTING A LOATHSOME MENTAL ILLNESS CAUSED BY CRIMINAL DRUG ABUSE BASED ON PLAINTIFF'S ANCIENT FEDERAL DRUG CONVICTION CONSTITUTES <u>DEFAMATION PER SE</u>.*

A false statement constitutes "defamation *per se*" if it involves (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct. See *Texas Disposal Sys. Landfill, Inc. v Waste Mgt. Holdings, Inc*., 219 S.W.3d 563, 580-581 (Tex.App.2007). McGlinchey through O'Conner, himself arrested in his youth, *see* Exhibit 1 (*O'Conner's mugshot*), committed defamation *per se* by falsely stating, *outside of litigation*, that Plaintiff suffers from a mental illness caused by criminal drug use, which imputes a crime, *see* 35 Pa. Stat. § 780-113(a)(16) (drug possession is a crime); 21 U.S.C. § 844 (same), and a loathsome drug induced mental illness. *See Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex.2013) (challenged statements are defamatory *per se* when "the statements ... are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages."). There can be no question that the e-mail constitutes defamation *per se* entitling Plaintiff to general damages.

By statute, a written statement constitutes defamation *per se* if it is one that

tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

*See* Tex. Civ. Prac. & Rem.Code § 73.001 (Elements of Libel).

The determination of whether statements are defamatory *per se* is generally a

matter of law for the court. *Texas Disposal Sys. Landfill, Inc. v Waste Mgt. Holdings,*

219 S.W.3d 563, 580-581 (Tex. App. 2007) ("The court may, however, pass the

inquiry to the jury if it determines that an ambiguity exists about the meaning and

effect of the words or that a predicate fact question remains about whether the

statements were published or were false."). If the court determines that an ordinary

reader can only perceive the challenged communication as defamatory and further

concludes that the communication is defamatory *per se*, it should so instruct the jury

and have the jury determine damages. Defamation *per se* claims allow the jury to

presume general damages without any proof of actual injury. *See Bentley v. Bunton,*

94 S.W.3d 561, 604 (Tex. 2002) ("Our law presumes that statements that are

defamatory *per se* injure the victim's reputation and entitle him to recover general

damages, including damages for loss of reputation and mental anguish."); *Texas*

*Disposal* at 584 (in cases of defamation *per se*, "the amount of actual general

damages remains a question for the jury"); *accord Adolf Coors Co. v. Rodriguez,*

780 S.W.2d 477, 488 (Tex.App.–Corpus Christi 1989) (under the presumption of

damages in libel *per se* cases, damages "are within the jury's discretion, are purely

personal, and cannot be measured by any fixed rule or standard"); *Bradbury v. Scott*,

788 S.W.2d 31, 39 (Tex.App.-Houston [1st Dist.] 1989) (in case of libel *per se*,

"where the amount of the actual damages is not capable of definite ascertainment,

and *prima facie* liability is established, determination of the amount is necessarily

lodged in the discretion of the jury"). The court should determine as a matter of law

that the challenged communication constitutes defamation *per se* and ultimately send

the Plaintiff's meritorious claim to a properly instructed jury to determine an award

of general damages at its discretion.[2]  The Plaintiff's claim should not be dismissed.

---

[2] The opinions relegated by the defendants to a footnote are distinguishable. ECF Doc. 9 at p.19, n.105 (*citing Herster v. Bd. of Sup'rs of Louisiana State Univ.*, 2013 WL 2422893 (M.D.La. 2013); *Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 765 (D. Minn. 2015) (utterance to co-workers that the plaintiff was a "crazy" or a "psycho ex-marine hiding in the bushes" was not defamation *per se*); *Todd v S. State Bank*, 2015 WL 6408121, at *3 (D.S.C. 2015) ("under South Carolina law, calling someone "crazy," "unstable," or "out of control" is not defamatory *per se*. But … those terms could be defamatory *per quod*.") (*denying* motion to dismiss); *Kryeski v. Schott Glass Techs., Inc.*, 426 Pa.Super. 105, 626 A.2d 595, 601 (1993) (hyperbolic utterances by employee to another that plaintiff was "crazy" were not defamatory); *Haywood v. Lucent Techs., Inc.*, 169 F. Supp. 2d 890, 916 (N.D. Ill. 2001) (statement that plaintiff was "unstable" was "objectively unverifiable" and not actionable because the statement was "pure opinion")). *Herster* defeats defendants' argument because the e-mail conveyed a false statement imputing a loathsome mental illness caused by criminal use of the drugs "peddled."  *See* Complaint, Exhibit C. *Herster* at *14 ("An opinion, which is based on the speaker's subjective view and which does not ***expressly state or imply the existence of underlying facts***, usually will not be actionable[,] [because] falsity is an indispensable element of any defamation claim... and a purely subjective statement can be neither true nor false.") (emphasis added; internal marks omitted).  *Reisdorf* and *Kryeski* involved utterances between co-workers distinguishable from the e-mail complained of falsely imputing a loathsome mental illness caused by criminal drug use. The district court in *Todd* denied a motion to dismiss because "name-calling" someone "crazy," "unstable," or "out of control," although not "defamatory *per se*" under South Carolina law, was susceptible to a defamatory interpretation. *Haywood* treated name-calling someone "unstable" as "pure opinion" which is not actionable.

Plaintiff submits that there exists no ambiguity about the meaning and effect of the statements in the e-mail, but if the court were to "pass the inquiry to the jury," *Texas Landfill*, the jury would most certainly determine that the e-mail constituted defamation *per se*. *See Rogers v Cassidy*, 946 S.W.2d 439, 446 (Tex. App. 1997) ("malice is presumed" in such cases) (collecting cases). The "ordinary reader" of the e-mail could readily view the challenged communication as defamatory and further conclude that the e-mail from the law firm constitutes "defamation *per se*" because it falsely imputes a loathsome mental illness caused by criminal drug use.

**RE: Only what Pres. Donald Trump calls the corrupt "administrative state" can uphold this decision**
O'Conner, Nicholas <noconner@mcglinchey.com>
Sat 3/11/2023 7:42 AM To:alexander moskovits
<alexander.moskovits@hotmail.com> Cc:Manning, Matt
<mmanning@mcglinchey.com>;Rostron, Teri trostron@mcglinchey.com

Mr. Moskovits,

*__We__ are aware of your time at Penn. It's my understanding that the activities you participated in and, in fact, facilitated during your time there have a significant impact on the human brain. Had you elected to study at Penn instead of consume what I can only presume was copious amounts of the very drug you peddled, you may still be of sound mind. Unfortunately, from your emails, it is very clear that you are not well. I hope that you get the help that you desperately need, but even you understand that this is a fruitless endeavor.* Your claims are frivolous and your emails are only building up a case that you filed this suit for the purpose of harassment. *Had you actually studied at Penn*, you may realize what everyone else already knows. It's frankly sad at this point that you are unable or unwilling to come to that obvious realization.

*See* Complaint, Exhibit C (3/11/2023 e-mail outside litigation) (emphasis added).

### *E-MAIL DOES NOT STATE A CONSTITUTIONALLY PROTECTED OPINION*

The words contained in the defamatory e-mail do not convey a "pure opinion" protected by the United States and Texas Constitutions. *See* U.S. Const. amend. I; Tex. Const. art. I, § 8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject, ***being responsible for the abuse of that privilege***....") (emphasis added). Plaintiff relies on the well-settled principle of law that, in order for a statement to be considered capable of defamatory meaning, it must be, or imply, a false statement of objective fact. *See Pisharodi v. Barrash*, 116 S.W.3d 858, 863 (Tex.App.-Corpus Christi 2003, *pet. denied*) (finding a statement accusing plaintiff of assault to be capable of defamatory meaning even though framed in terms of a "professional opinion"). In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), the U.S. Supreme Court rejected the proposition that the First Amendment provides protection for defamatory statements categorized as "opinion" rather than "fact." 497 U.S. at 17-22. The Court noted that expressions of "opinion" may often imply actionable assertions of objective fact. *Id*. at 18.

Even if the law firm had written, "***in our opinion***, *[h]ad you elected to study at Penn instead of consume what I can only presume was copious amounts of the very drug you peddled, you may still be of sound mind*", it would still imply their knowledge of objective facts leading to the conclusion Plaintiff is not of sound mind. Framing such statements in terms of "opinion" does not dispel these implications.

To be actionable, a false statement must assert an "objectively verifiable fact" rather than an opinion. *Bentley*, 94 S.W.3d at 580-581. "We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex.App.–Dallas 2014, *no pet.*). A statement is an opinion if it is "by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder" or is "a loose and figurative term employed as metaphor or hyperbole." *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 511 (Tex.App.-Tyler 2008). Whether a writing is a statement of fact or opinion is a legal question. *Am. Heritage* at 875. Defendants cite distinguishable cases. ECF Doc. 9 at p.24.The statement that Plaintiff acquired a loathsome mental illness caused by his criminal use of the drugs that he "peddled" was "objectively verifiable" as false had defendants conducted review of the court record in *USA v. Moskovits*, Case No. 1987-CR-284 (E.D.Pa.), where the government sought a harsher sentence to punish Plaintiff more severely because he did ***not*** use any drugs. Indeed, the defendants also disingenuously ignore the praise given by U.S. Magistrate Judge Dena Palermo to Plaintiff of sound mind. Her Honor stated on the record that she was "very impressed" with the "outstanding" quality of Plaintiff's papers. *See* Complaint, Exhibit D (1/19/2022 Transcript) at pp.18-19. Defendants knew Plaintiff is autistic, *id.* at p.18, before sending the e-mail imputing a loathsome mental illness induced by criminal drug use while in college.

Here, the e-mail from a law firm went well beyond name-calling and imputed a mental illness induced by the "very drug" Plaintiff was convicted of "peddl[ing]." In sum, defendants adopted a false statement ***expressly based on the existence of underlying facts***, *i.e.*, Plaintiff's ancient drug involvement, to impute a crime and a loathsome mental illness caused by criminal use of the drugs "peddled." Unlike the "objectively unverifiable" name-calling that someone is "unstable," which the court treated as constitutionally protected "pure opinion" in *Haywood*, defendants were present when Plaintiff revealed his diagnosed autism, and had access to the record in *USA v. Moskovits*, Case No. 1987-CR-284 (E.D.Pa.) to learn "the truth" ***that the government sought a sentence that would punish Plaintiff more severely because he did not use drugs***. The e-mail expressly stated or implied the existence of facts to impute a loathsome mental illness caused by criminal drug use in college, and the defamatory communication is ***verifiably false***. Therefore, the e-mail did not state a constitutionally protected "pure opinion," and the defamation *per se* claim survives.

### OBJECTION TO FALSE HEARSAY USED TO CLAIM "UNDISPUTABLE FACTS"

Plaintiff graduated on "the Dean's List" and earned his Bachelor's of Science degree in Economics from the Wharton School at the University of Pennsylvania. Plaintiff was never "expelled" despite his conviction for drug offenses committed in his undergrad years. Defendants justify the defamation *per se*, in part, by misstating that Plaintiff was "expelled" due to his conviction. *See* ECF Doc. 9 at p.23, ¶49

("O'Conner disputed the success he had at the university as a result of the fact that he was ***expelled*** for his substantial part in the cocaine distribution scheme.") (emphasis added); *see also id*. at p.17, ¶38 ("The statements in O'Conner's email to Plaintiff do not qualify as defamation *per se*. The statements surround Plaintiff's prior conviction of possession and distribution of a substantial amount of cocaine through the University of Pennsylvania, which resulted in Plaintiff's ***expulsion***. That Plaintiff was convicted of various drug and other charges and, as a result, was ***expelled*** from the university, are ***undisputable facts*** that are within the public record and have been reported by local and national news sources.") (emphasis added; footnote omitted); *id*. at p.21, ¶46 ("essentially derogatory implication of the challenged statement is ***undisputed***: Plaintiff was convicted of possession of cocaine in connection with serious drug distribution charges, he threatened to kill any witness who testified against him, and was ***expelled*** from the University of Pennsylvania as a result. This was reported several times in the Daily Pennsylvanian, mentioned by the N.Y. Post, and on the University of Pennsylvania's website. ***Plaintiff does not dispute these facts***, but alleges instead that he did not consume any of the nearly 50 kilograms of cocaine that he distributed through the university.") (emphasis added; footnotes omitted). Lawyers should know better than to present, as "undisputable facts," article snippets belied by the federal court record (E.D.Pa.), which they failed to access for "the truth," preferring rank, inadmissible "hearsay."

Plaintiff was never "expelled" from the University, but *false hearsay* found in one line of a long online article by a student, serves as the basis for the defendants to blatantly misrepresent to this Court that the "expulsion" is an "undisputable" fact. The defendants' "reckless disregard for the truth" (McGlinchey is defending itself) continues even here, but, having now occurred within the four corners of a motion, it is distinguishable from *the "defamation per se" complained of, which occurred "dehors" the record, i.e., outside of litigation*, as documented in the e-mail sent by O'Conner, copying both Manning and McGlinchey staff. *See* Complaint, Exhibit C. The false statement made to this Court *within this litigation* that it is "undisputable" that Plaintiff was "expelled" is protected by the litigation privilege, but that privilege does not extend to the e-mail sent outside of litigation, *falsely stating that Plaintiff suffers from a loathsome mental illness caused by "copious" drug abuse, imputing both criminal drug use and a resulting loathsome mental illness in one fell swoop*. Defendants, being lawyers, could have easily accessed the federal court records in *USA v. Moskovits*, Case No. 1987-CR-284 (E.D.Pa.), to learn the truth, *i.e.*, *that the government sought a sentence that would punish Plaintiff more severely because he did not use drugs, and that Plaintiff was not "expelled" despite the conviction*. Plaintiff *objects* to the inadmissible hearsay misused to assert material falsehoods as if they are "undisputable facts." *See Roberts v City of Shreveport*, 397 F.3d 287, 295 (5th Cir 2005) (articles are "classic, inadmissible hearsay").

### THE PLAINTIFF IS NOT "LIBEL PROOF"

*"If the law[yer] supposes that," said Mr. Bumble, squeezing his hat emphatically in both hands, "the law[yer] is a ass — a idiot. If that's the eye of the law, the law is a bachelor; and the worst I wish the law is that his eye may be opened by experience…."*
— Charles Dickens, Oliver Twist (brackets added).

Defendants try to extend the "theory that a convicted criminal can establish a bad reputation that can render him libel proof." *See* ECF Doc. 9 at p.20, ¶45 (*citing Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512 (Tex. App. - Tyler 1987)). Only "by experience", will a "law[yer]" feel like "a ass - a idiot", for arguing that defamation *per se* can be dished out at will by extending the "libel proof doctrine" to a near 60-year old convicted of drug offenses committed from the age of 19 to the age of 23, but never again! Defendants suggest that Plaintiff, who has worked for criminal defense lawyers for over 25 years, never recidivating after he was charged in 1987, is "libel proof." The absurd result sought would declare "open season" on rehabilitated adults with youthful drug convictions. Texas courts "have vigorously guarded the right of a citizen to defend his reputation, however tarnished, from libelous publications." *McBride v New Braunfels Herald-Zeitung*, 894 S.W.2d 6, 10 (Tex. App. 1994). "[E]ven if [Plaintiff's] convictions were well known [years ago], we could not say that his criminal history is so extreme that no reasonable person could find further damage to his reputation by the false accusation of a [mental illness caused by criminal drug abuse, some 37 years after the federal drug charges]." *See McBride* at 10-11 (brackets added).

Defendants' reliance on *Logan v D.C.*, 447 F.Supp 1328, 1332 (D.D.C. 1978), *see* ECF Doc. 9 at p.20, ¶45, n.114, where a plaintiff was found to be "libel proof" as a matter of law is misplaced because Logan had a federal narcotics conviction in 1958, had been charged with a federal narcotics violation in 1966 and committed under the Narcotics Addicts Rehabilitation Act Program, had an unlawful entry conviction in 1974, and was serving a sentence for a federal firearms conviction at the time of the defamation suit. Defendants' reliance on *Cofield v. Advertiser Co.*, 486 So. 2d 434, 435 (Ala. 1986) and *Jackson v. Longcope*, 394 Mass. 577 (1985), *id.* at p.20, ¶45, n.114, is misplaced because Cofield was a "habitual criminal" in prison most of his life, and Jackson was a prisoner convicted of serious crimes, was serving a life sentence for murder, and was under indictment for additional murders. By contradistinction, Plaintiff was a youthful offender, and he has never recidivated in the 37 years since charged in Philadelphia, Pennsylvania in 1987 at the age of 23.

A kernel of truth and common sense underlies the libel-proof doctrine: the reputation of an Adolph Hitler or Charles Manson could not be damaged as a matter of law, and therefore a court's time and resources should not be expended in litigating their spurious libel claims. Perhaps, in considering a libel action by an individual with an equally despicable reputation, the libel-proof doctrine should be invoked in furtherance of judicial economy.

*Langston v Eagle Pub. Co.*, 719 S.W.2d 612, 623 (Tex App 1986). Plaintiff is neither a habitual offender, nor an infamous public figure like Hitler or Manson. Therefore, the defendants' invocation of the "libel proof doctrine" is frivolous at best.

Defendants suggest that the doctrine is applied to those cases "in which the challenged statement erroneously describes behavior similar or identical to that for which the plaintiff has been conclusively shown to be guilty." ECF Doc. 9 at p.20. The false statement cast Plaintiff as suffering, not from autism, but from a loathsome mental illness caused by the "very drug" that Plaintiff was convicted of distributing. *Plaintiff has never been charged with being mentally ill due to criminal drug use, and lawyerly review of the record in USA v. Moskovits, Case No. 1987-CR-284 (E.D.Pa.) would have shown "the truth" that the government sought a sentence that would punish Plaintiff more severely because Plaintiff did not use any drugs*.

### *PLAINTIFF IS NOT A "LIMITED PUBLIC PERSON"*

Grasping for straws, defendants also argue that the "facts demonstrate that Plaintiff *was* a limited public figure as it relates to his involvement and conviction for distributing cocaine." ECF Doc. 9 at p.23, ¶ 49 (emphasis and brackets added). *On March 11, 2023, when the defamatory e-mail was sent*, Plaintiff was certainly not a "limited public figure," as there were then no pending or recent prosecution or any public matter involving him. Defendants argue that Plaintiff has to show "actual malice" in his *prima facie* case for defamation since he is a "limited public figure." A private person need only prove that defendants acted with negligence. However, as the e-mail here constitutes "defamation *per se*" because it imputed both a crime and a loathsome mental illness caused by criminal drug use, "malice is presumed."

*See Rogers*, 946 S.W.2d at 446; *see also Goree v. Carnes*, 625 S.W.2d 380, 385 (Tex.App.—San Antonio 1981) (*citing Houston Belt & Terminal Railway Co. v. Wherry*, 548 S.W.2d 743 (Tex.Civ.App.—Houston [1st Dist.] 1976)).

In *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568 (Tex. 1998), the Texas Supreme Court adopted a three-part test to determine if one is a limited public figure:

(1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Id*. at 571 (*citing Trotter v. Jack Anderson Enters. Inc.,* 818 F.2d 431 (5th Cir. 1987)). In *McLemore*, the Court began its analysis by reviewing the controversy. *Id.* at 572. To determine if there is a public controversy, the judge "must determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question. ***A general concern or interest will not suffice***." *Id*. (emphasis added). Plaintiff's purported status as a "limited public figure" does not clear the first hurdle of the *McLemore* three-part test because the few articles collected by defendants regarding drug offenses committed in the distant past have no ties to any pending or recent public matters. Otherwise, defendant O'Conner's own arrests, *see* Exhibit 1 (O'Conner's mugshot), would also make him (and all other citizens with prior arrests) "limited public figures" ***forever***. *Cf.*, *Bible,* John 8:7 ("He that is without sin among you, let him first cast a stone").

Having no pending or recent public matters, Plaintiff is just a simple private person. *Polk County Publ. Co. v. Coleman*, 668 S.W.3d 385, 393-394 (Tex. App. 2021) (purported status as a limited public figure failed first step of *McLemore* test because articles had no ties to any pending or recent prosecution or other public matter that involved Coleman or the Polk County District Attorney's office). The court need not analyze the two other elements of the test. *See Klentzman v. Brady*, 312 S.W.3d 886, 906-908 (Tex App 2009) (holding that the appellee was a not a limited public figure because the publication did not discuss a public controversy). Whether an individual is a "limited public figure" is a question of law for the court to decide. *See id.* at 904. "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention or is newsworthy." *Id.* "Even engaging in criminal conduct does not make make a person a limited-purpose public figure." *Id*. at 905. Plaintiff is no such person and need not prove actual malice in his *prima facie* case of defamation. As "malice is presumed" in defamation *per se* cases as a matter of law, *Rogers*, *supra,* the issue is academic.

Plaintiff can prove by clear and convincing evidence that the e-mail was sent with "actual malice," meaning that the false imputation of a loathsome mental illness caused by criminal drug use was published with the knowledge that it was false or with reckless disregard for its truth or falsity verifiable in U.S. Court records. Indeed, Plaintiff will cautiously move to amend his Complaint to allege "actual malice."

### *PLAINTIFF HAS SUFFICIENTLY PLEADED HIS FRAUD CLAIMS*

"In order to set aside a judgment or order because of fraud upon the court. . . it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision."

*Rozier v Ford Motor Co*., 573 F.2d 1332, 1338 (5th Cir 1978). Plaintiff does not allege a garden variety "nondisclosure to the court of facts allegedly pertinent to the matter before it," *id*. at 1338, but an unconscionable scheme to fraudulently conceal evidence probative of statements made by MBFS, through its agents and affiliates, to law enforcement that the car was lost during a robbery in Mexico, as represented in federal court by counsel for Mercedes-Benz of Miami, conclusively establishing that law enforcement assistance was utilized during the international export-import repossession of the vehicle that Plaintiff only drove for ten (10) days despite paying over $28,000 toward the car with a showroom price of approximately $38,000, and which MBFS and its agents auctioned without contractually required prior notice to allow Plaintiff to redeem his vehicle, which he expected to drive for at least 6 years.

Defendants ask the court to "see no evil, hear no evil, and speak no evil" about defendants' fraud on the court scheme to cover up ***their clients' crimes***, *i.e*., false statements made to federal and state law enforcement officers in Laredo, Texas in violation of federal and state laws. *See* 18 U.S.C. § 1001; Texas Penal Code § 37.09. The "cover up" concealed the material fact that defendants'clients broke Texas law, denying Plaintff constitutionally due court process before repossession and auction.

*See* Tex.Bus.&Com § 9.609, UCC Cmt. 3 ("this Section does ***not*** authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer") (emphasis added). Defendants' clients used the assistance of law enforcement upon reporting the loss of the vehicle during a robbery as required by the law to pre-approve the export-import repossession without judicial process. The vehicle was taken from an official Mercedes-Benz dealer in Veracruz, Mexico, where Plaintiff left it for prepaid repairs, through the U.S. border in Laredo, Texas into the custody of Laredo, Texas police who stored the car *en route* to an auction, which the court in the first Texas case found was conducted without prior notice to Plaintiff in breach of contract. *But see* ECF Doc. 9 at p.15 (arguing that plaintiff's allegation that defendants' clients "falsely informed law enforcement that the vehicle was stolen is immaterial", although it is case dispositive evidence of the utilization of law enforcement). Defendants treat fraudulent concealment of a material fact, as if it can be distinguished from "the fabrication of evidence by a party in which an attorney is implicated, [that] constitute[s] a fraud on the court." *Rozier* at 1338 (brackets added). Defendants "won" by fraudulently concealing evidence probative of the utilization of law enforcement during a repossession without judicial process, although counsel for the Mercedes Benz of Miami dealership, where Plaintiff signed his contract with McGlinchey client MBFS, filed a motion revealing a claimed loss during a robbery in Mexico. Complaint, Exhibit B. The fraud claims should survive.

Defendants' contention that Plaintiff cannot litigate in this independent action

the alleged "fraud upon the court" because the issue could have been litigated in the

first Texas federal case, *see* ECF Doc. 9 at p.10 & n.52 (*quoting Sinesterra v. Roy*,

347 F. App'x 9, 10 (5th Cir. 2009)), overlooks that *Sinesterra* did not involve a claim

of fraud and that extending the rationale of *Sinesterra* to a fraud on the court would

eviscerate the intent of Rule 60(d)(1), Fed.R.Civ.P. ("Other Powers to Grant Relief.

This rule does not limit a court's power to: (1) entertain an independent action to

relieve a party from a judgment, order, or proceeding"), & Rule 60(d)(3) ("This rule

does not limit a court's power to: (3) set aside a judgment for fraud on the court.").

*See* ECF Doc. 9 at p.11, ¶24 ("At no point did Plaintiff bring this alleged evidence

to the Court's attention while the First Texas Lawsuit was pending and, thus, he has

waived any claim of fraud on the court."). One cannot have the right to set aside a

prior judgment for "fraud on the court" in an independent action, yet "waive" a claim

of "fraud on the court" if not raised in the original action. Defendants are not clear.

Given the ***miscarriage of justice*** embodied in fraudulently concealing evidence that

is case dispositive, the one-year statute of limitation cannot be used to bar this action.

*ABC Utils. Servs. Inc. v. Orix Fin. Servs. Inc.*, 98 F. App'x 992, 994 (5th Cir. 2004)

(if allegations could support a Rule 60(b)(3) motion, "but the action is outside the

one-year limitations period ***and does not rise to the level of a miscarriage of justice***,

an independent action must fail.") (emphasis added). Defendants are in denial mode.

### *FRAUD EXCEPTION TO ATTORNEY IMMUNITY AND LITIGATION PRIVILEGE*

Defendants also contend that the Plaintiff's claims that they withheld evidence and committed fraud at a court hearing are barred by both the litigation privilege and attorney immunity under Texas law. *See* ECF Doc. 9 at p.11, ¶26. Defendants submit that even Plaintiff's claim that they "concealed case dispositive evidence" is shielded by attorney immunity. *Id*. at ¶28. Attorneys are not shielded from liability to non-clients for their actions when they do not qualify as "the kind of conduct in which an attorney engages when discharging his duties to his client." *Cantey Hanger, LLP v Byrd*, 467 SW3d 477, 482-483 (Tex 2015) (citations omitted). For example, the Supreme Court of Texas held that an attorney "will not be heard to deny his liability" for the damages caused by his participation in a fraudulent scheme with his client. *See also Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex.App.–Houston [1st Dist.] 2012, *pet. denied*) (holding that attorneys were not immune from claims that they knowingly assisted their clients in evading a judgment through a fraudulent transfer). Some courts have embraced the fraud exception and broadly hold that attorney immunity does not extend to an attorney's knowing participation in fraudulent activities for his client. *See Querner v. Rindfuss,*966 S.W.2d 661, 666 (Tex.App.–San Antonio 1998) ("An attorney ... is liable if he knowingly commits a fraudulent act or knowingly enters into a conspiracy to defraud a third person."). As concealing case dispositive evidence is a gross injustice, there is no immunity.

Defendants present no argument or supporting law for the application of the "litigation privilege" as a shield against Plaintiff's claims. To the extent defendants attempt to extend the privilege to out-of-court communications, the court in *Russell v. Clark*, 620 S.W.2d 865, 868-869 (Tex. App. – Dallas 1981, *writ ref'd n.r.e.*) held that an absolute litigation privilege does not extend to an attorney's communications outside of judicial proceedings. *See also Helfand v. Coane*, 12 S.W.3d 152, 157 (Tex.App.—Houston [1st Dist.] 2000, *pet. denied*) (determining whether out-of-court statement is absolutely privileged requires sufficient discovery). Finally, Plaintiff submits the courts should apply a fraud exception to the litigation privilege, as there is a fraud exception to attorney immunity.

Defendants misconstrue Plaintiff's alternative intrinsic fraud claim based on the same concealment of evidence showing defendants' clients committed crimes by making false statements to state and federal law enforcement officers in the exercise of their duties in violation of Texas Penal Code § 37.09 and 18 U.S.C. § 1001, and thereby also denied Plaintiff case dispositive evidence to show defendants' clients utilized the assistance of law enforcement in a repossession without judicial process, which would have entitled Plaintiff to treble damages in the first Texas Lawsuit under the Texas Deceptive Trade Practice Act (DTPA) as denial of judicial process constitutes unconscionable conduct. ***Nowhere in his Complaint***, Plaintiff tries to plead a "private cause of action" based on the violations of the penal statutes.

Nowhere does Plaintiff raise "the assertion that MBFS **and Defendants** violated of 18 U.S.C. § 1001 and Texas Penal Code § 37.09." ECF Doc. 9, p.13, ¶29 (emphasis added). Plaintiff simply alleges that the defendants committed fraud by concealing evidence of the false statements made by their clients to state and federal law enforcement officers that the car was lost in a robbery to facilitate repossession, which would have proven that law enforcement was utilized in Mexico and the United States during the export-import repossession. The alleged crimes are simply inextricably intertwined, but the crux of the claim is the fraudulent concealment of evidence that law enforcement assisted the repossession without judicial process in violation of Tex.Bus.&Com § 9.609, UCC Cmt. 3 ("this Section does **_not_** authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer") (emphasis added).

A judgment can be attacked on the basis of intrinsic fraud that results from corrupt conduct by officers of the court, *Browning v. Navarro*, 826 F.2d 335, 344 (5th Cir. 1987), such as the fraudulent concealment of the evidence that defendants' clients committed crimes by making false statements **_to law enforcement_**, which deprived Plaintiff of the case dispositive evidence that defendants' clients reported Plaintiff's vehicle to police as lost during a robbery in Mexico and thereby used the assistance of law enforcement officers in the repossession without judicial process. Both the fraud on the court claim and the intrinsic fraud claim should survive.

### *PLAINTIFF TIMELY SERVED ALL OF THE DEFENDANTS*

Plaintiff hired a process server, Azucena Solano, who diligently attempted to serve defendants O'Conner and Manning at residential addresses provided for them within a data fusion report. On December 19, 2023, a first attempt was made to serve defendant O'Conner, but he was no longer living at the home address listed for him. The process server contacted the real estate agent who sold the house, and sent a message to O'Conner that she was trying to serve him. Other than McGlinchey's office address in Houston, Plaintiff obtained no other current address for O'Conner. On December 14, 2023 at 8:07a.m., the first attempt to serve Manning at his home found an empty house. On December 18, 2023 at 12:59p.m., the second attempt to serve Manning also found an empty house. The server, as is her customary practice, attached a notice to the front door seeking to schedule a date and time for service, but Manning never called.  As a result, Ms. Solano timely served both defendants through "Tina Parsons," identified in the "proof of service" as the "office manager" who advised she was authorized to accept service for defendants during their absence from McGlinchey's office on December 29, 2023.  McGlinchey's "registered agent" was timely served on December 15, 2023. See ECF Doc. 8-1-8-3 (summonses with proof of service), It should also be noted that defendants received a copy of the filed Verified Complaint on October 6, 2023, three days after it was  filed, through the same e-mail addresses always previously used for service in the first Texas lawsuit.

*See* Exhibit 2 (10/6/2023 e-mail) ("Dear Mr. Manning and Mr. O'Conner: Kindly find attached 18-page verified complaint (85 pages in total with exhibits) pleading actions for extrinsic fraud on the court, intrinsic fraud and defamation *per se*. It was filed on 10/03/23 in the Southern District of Texas, Houston Division. You will each receive a hard copy of the attached complaint along with hard copies of the attached standard forms for notice of lawsuit and request for waiver of summons and for waiver. You will receive the required number of copies of each document in the mail with a self-addressed pre-paid envelope to return your waivers to my NY mail address even though I am now in Uruguay.").

Plaintiff used all due diligence to effectuate proper service on all of the case defendants per Rule 4, Fed.R.Civ.P., and, having shown good cause, "the court must extend the time for service for an appropriate period." Rule 4(m)[3] if the court disagrees with the proposition that upon serving McGlinchey and its office manager

---

[3] Rule 4(m), Fed.R.Civ.P. ("Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."). *See Millan v. USAA General Indem. Co.*, 546 F.3d 321 (5th Cir. 2008) (assuming *arguendo* that plaintiff could not show good cause for his failure to timely serve defendant, district court erred in refusing to grant plaintiff additional time for service under discretionary provisions of federal civil rule governing time limit for service of complaint, as plaintiff's delays in effecting service, while negligent, did not result from contumacious conduct and record did not contain any aggravating factors; only potential prejudice identified by defendant was that of having to defend case on its merits and possibility of someone having to pay damages to plaintiff, which was not the sort that required dismissal).

authorized to accept service, all the lawyer-defendants were served, as the licensed professionals who compose the PLLC (professional limited liability company). *See Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, 47 F.Supp.3d 68 (D.D.C.2014) (Plaintiff sufficiently alleged that lawyer was authorized to receive service on behalf of defendant law firm partnership, on defendant's motion to dismiss for insufficient service of process; plaintiff alleged that lawyer conducted business with plaintiff on behalf of defendant, that defendant's secretary repeatedly told the process server that lawyer was one of only two persons at the defendant firm who could accept service, and that when lawyer was served, he gave no indication to process server that he was not authorized to accept service on behalf of defendant); *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988) (service of process on receptionist in the shared office of defendant corporation and another corporation was sufficient to create personal jurisdiction over defendant where receptionist was the only office employee demonstrating that more than minimal responsibility was assigned to her, and defendant had actual knowledge of service of process). It would be inappropriate to dismiss O'Conner and Manning, as they were timely served via the PLLC and office staff authorized to receive service of process, and received notice of the lawsuit on October 6, 2023, via their McGlinchey e-mail addresses. *See* Exhibit 2 (e-mail attaching complaint).

If the court disagrees that all defendants have been served, Plaintiff requests

an appropriate extension of the service period under the totality of the circumstances,

which show sufficient good cause to grant the extension requested.

## CONCLUSION

For all of the foregoing reasons, Plaintiff prays this Honorable Court will

deny the defendants' motion to dismiss in all respects.

/s/Alexander Moskovits
Alexander Moskovits
Yoo Punta del Este
Av. Franklin Delano Roosevelt, Apt. 2010
Parada 8, 20100 Punta del Este, Uruguay
Email: alexander.moskovits@hotmail.com

## VERIFICATION

I, Alexander Moskovits, HEREBY VERIFY under penalty of perjury under

the laws of the United States of America that the foregoing is true and correct.

Executed on January 26, 2024.

/s/Alexander Moskovits

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have served a true and correct copy of the foregoing Plaintiff's verified response to motion to dismiss on counsel for the defendants, R. Dwayne Danner (ddanner@mcglinchey.com) and Kathryn B. Davis (kdavis@mcglinchey.com) on this 26th day of January, 2024.

/s/Alexander Moskovits

**EXHIBIT 1 – DEFENDANT NICHOLAS O'CONNER "MUGSHOT"**

## Possible Criminal/Infractions

### 15 Found

IMPORTANT: Due to varying quality of source data, records displayed may not pertain to your subject. Independent verification of data displayed is highly recommended.
Criminal/Infraction results in a Comprehensive Report may be limited due to strict matching logic. For broader results, a separate Criminal/Infraction Search is highly recommended.

| | Category: | CRIMINAL/INFRACTION |
|---|---|---|

NICHOLAS REID O CONNER
**DOB:**
05/15/1989 (33)

| **Gender:** | MALE | **Height:** |
|---|---|---|
| **Race:** | WHITE | **Weight:** |
| **Hair:** | | **Skin Tone:** |
| **Eyes:** | | **Body Build:** |

**Subject Addresses:**
4821 DEVON CIR, NAPLES, FL, 34112 (COLLIER)
(05/21/2014-Current)

**Source:** FL HILLSBOROUGH CIVIL TRAFFIC

**Case Number:** 14-TR-084443

| **Offense Code:** 316187(2)C | **Charges Filed:** | **Case Type:** |
|---|---|---|
| **Source State:** FL | 05/23/2014 | **Description:** 575 |
| | **Conviction Date:** | SPEED/ROADWAYS |
| | **Offense Date:** 05/21/2014 | |

**Disposition (Date):** ADJUDICATION WITHHELD BY CLERK (SCHOOL/TOLL
ELECTION) 06/28/2014

## Possible Criminal/Infractions

**15 Found**

IMPORTANT: Due to varying quality of source data, records displayed may not pertain to your subject. Independent verification of data displayed is highly recommended.
Criminal/Infraction results in a Comprehensive Report may be limited due to strict matching logic. For broader results, a separate Criminal/Infraction Search is highly recommended.

---

**Category: CRIMINAL/INFRACTION**

**NICHOLAS REID O CONNER**
**DOB:**
05/15/1989 (33)

| | |
|---|---|
| **Gender:** MALE | **Height:** |
| **Race:** WHITE | **Weight:** |
| **Hair:** | **Skin Tone:** |
| **Eyes:** | **Body Build:** |

**Subject Addresses:**
4821 DEVON CIR, NAPLES, FL, 34112 (COLLIER)
(05/21/2014-Current)

**Source: FL HILLSBOROUGH CIVIL TRAFFIC**
**Case Number:** 14-TR-084443
**Offense Code:** 316187(2)C
**Source State:** FL

**Charges Filed:** 05/23/2014
**Conviction Date:**
**Offense Date:** 05/21/2014

**Case Type:**
**Description:** 575
SPEED/ROADWAYS

**Disposition (Date):** ADJUDICATION WITHHELD BY CLERK (SCHOOL/TOLL ELECTION) 06/28/2014
**Court:** FL HILLSBOROUGH CIRCUIT COURT

---

**Category: CRIMINAL/INFRACTION**

NICHOLAS R OCONNER
NICHOLAS REID OCONNER
NONE KNOWN
**DOB:**
05/15/1989 (33)

| | |
|---|---|
| **Gender:** MALE | **Height:** 6 1,601",6'1,601 |
| **Race:** C,W,WHITE | **Weight:** 190,190 LBS |
| **Hair:** BRO,BROWN | **Skin Tone:** MEDIUM |
| **Eyes:** BROWN | **Body Build:** |



**Subject Addresses:**
4821 DEVON CIR, NAPLES, FL, 34112 (COLLIER)
(08/10/2012-Current)

**EXHIBIT 2 – EMAIL TO DEFENDANT NICHOLAS R. O'CONNER AND DEFENDANT MATT D. MANNING ATTACHING FILED COMPLAINT**

## Moskovits v. McGlinchey Stafford PLLC, et al; complaint and standard forms attached

alexander moskovits <alexander.moskovits@hotmail.com>

Fri 10/6/2023 10:33 AM

To:Manning, Matt <mmanning@mcglinchey.com>;O'Conner, Nicholas <noconner@mcglinchey.com>;
Rostron, Teri <trostron@mcglinchey.com>

📎 7 attachments (4 MB)
AM.v.McGlinchey.et.al.pdf; ao399(2).pdf; ao398(1).pdf; ao398.pdf; ao399.pdf; ao399(1).pdf;
ao398(2).pdf;

Dear Mr. Manning and Mr. O'Conner:

Kindly find attached 18-page verified complaint (85 pages in total with exhibits) pleading actions for extrinsic fraud on the court, intrinsic fraud and defamation per se. It was filed on 10/03/23 in the Southern District of Texas, Houston Division.

You will each receive a hard copy of the attached complaint along with hard copies of the attached standard forms for notice of lawsuit and request for waiver of summons and for waiver.

You will receive the required number of copies of each document in the mail with a self-addressed pre-paid envelope to return your waivers to my NY mail address even though I am now in Uruguay.

Thank you, AM