United States District Court
Southern District of Texas
**ENTERED**
May 01, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER MOSKOVITS, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-3746 |
| | § | |
| MCGLINCHEY STAFFORD PLLC, ET AL., | § | |
| *Defendants*. | § | |

## MEMORANDUM AND RECOMMENDATION

This case is before the Court on Defendants' Motion to Dismiss.[1]  ECF 9. Having reviewed the parties' submissions and the law, the Court recommends that the Motion to Dismiss be GRANTED and Plaintiff's clams be dismissed with prejudice.

### I.     Background

In January 2017, Plaintiff put down $19,000 toward the purchase of a new 2017 Mercedes-Benz CLA 250 (the vehicle).  ECF 1 ¶ 8.  He drove the vehicle to Mexico, where he left it at a Mercedez-Benz dealer in VeraCruz for repairs.  *Id.* ¶ 10.  Plaintiff never recovered the vehicle.  He stopped making payments in November 2018 after having paid an additional $9,000 towards the purchase price

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the Cost and Delay Reduction Plan under the Civil Justice Reform Act.  ECF 3.

of the vehicle.  *Id.* ¶ 12.  On or about July 16, 2019, U.S. federal agents facilitated the transport of the vehicle from VeraCruz, Mexico to Laredo, Texas where the Laredo Police Department took custody of it.  *Id.* ¶ 13.  In August 2019, the vehicle was sold at auction in Houston, Texas by Mercedes-Benz Financial Services USA LLC (MBFS).  *Id.* ¶ 14.  Since 2018, Plaintiff has been waging a campaign in the courts to recover damages for his loss of the vehicle.

In May 2018, Plaintiff sued the dealer and others in Florida state court in an action styled *Moskovits v. L.P. Evans Motors WPB, Inc. d/b/a Mercedes-Benz of Miami, et al.*, Case NO. 2018-015388-CA-01, in the 11th Judicial Circuit of Miami-Dade County, Florida.  The Florida state case was stayed pending arbitration, the result of which is not a matter of record.

In 2021, Plaintiff filed a case in federal court in Florida based on the same facts regarding the vehicle as in the Florida state court case and adding claims for conspiracy and violation of his civil rights against the lawyers and Judge involved in the state court case.  *See Moskovits v. Mercedes-Benz USA, LLC*, No. 1:21-CV-20122, 2022 WL 283001, at *2 (S.D. Fla. Jan. 10, 2022) (listing parties and causes of action in each case), report and recommendation adopted No. 21-CV-20122, 2022 WL 278959 (S.D. Fla. Jan. 31, 2022).  The Florida district court dismissed all of Moskovits's claims with prejudice and the Eleventh Circuit Court of Appeals

affirmed the district court's decision.  *Moskovits v. Mercedes-Benz USA, LLC*, No. 22-10664, 2022 WL 17259158, at *5 (11th Cir. Nov. 29, 2022).

Also in 2021, Plaintiff filed *Moskovits v. MFBS et al.*, Civil Action No. 4:21-cv-2260, in United States District Court for the Southern District of Texas.  In Civil Action No. 21-2260, Plaintiff sued Mercedes Benz Financial Services (MBFS), Automotive Recovery Services, Inc., and unnamed state and federal agents.  The Complaint in Civil Action No. 21-2260 involved the same repossession of the Mercedes-Benz vehicle as the Florida cases.  *See* ECF 1 at 19-36.  United States Magistrate Judge Dena Hanovice Palermo issued a detailed report recommending that all of Plaintiff's claims be dismissed with prejudice.  *Moskovits v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 4:21-CV-2260, 2022 WL 3969547, at *1 (S.D. Tex. July 18, 2022), report and recommendation adopted, No. 4:21-CV-02260, 2022 WL 3998507 (S.D. Tex. Aug. 31, 2022), appeal dismissed sub nom. *Moskovits v. Mercedes-Benz Fin. Servs. USA, L.L.C.*, No. 22-20522, 2023 WL 2770957 (5th Cir. Mar. 22, 2023), and aff'd sub nom. *Moskovits v. Mercedes-Benz Fin. Servs. USA, L.L.C.*, No. 22-20522, 2023 WL 6972986 (5th Cir. Oct. 23, 2023).  United States District Judge Keith P. Ellison adopted Judge Palermo's recommendations in full and the Fifth Circuit Court of Appeals affirmed the district court's decision.  *Id.*

On October 3, 2023, before the appeal of the decision in Civil Action No 21-2260 was concluded, Plaintiff filed the instant Complaint naming as Defendants the

law firm of McGlinchey Stafford PLLC and two attorneys from that firm, Nicholas O'Conner and Matt D. Manning, who represented the defendants in Civil Action No. 21-2260 against Plaintiff's claims arising from the repossession of the Mercedes-Benz.[2]  The instant Complaint asserts claims against McGlinchey Stafford and the two attorneys (the Law Firm Defendants) for fraud on the court, intrinsic fraud, and defamation *per se*.  ECF 1.

The gist of Plaintiff's Complaint against the Law Firm Defendants is that during a January 19, 2022 status conference in Case No. 21-2260, the Law Firm Defendants withheld from the Court that MBFS falsely told law enforcement officials that the vehicle had been stolen, and consequently obtained a judgment in Case No. 21-2260 in their client MBFS's favor.  *See id.*  In addition, Plaintiff claims the Law Firm Defendants defamed him by suggesting in a March 11, 2023 email from O'Conner that Plaintiff's history of drug use had left him mentally incapacitated.  *Id.* at 12-13.  The Law Firm Defendants now move to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

---

[2] During the pendency of his appeal, Plaintiff also filed a substantially similar lawsuit against MBFS in state court in Michigan.  *Moskovits v. Mercedes-Benz Financial Servs. USA, LLC*, Case No. 2023-201552-CZ, in the Circuit Court of Oakland County, Michigan.  Defendants have informed the court that the Michigan court granted summary judgment and dismissed the case.  ECF 26 at 2 n.1.

## II.     Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion.  If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P. 12(d).  However, the court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims. *See Norris v. Hearst*

5

*Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).  In this case, the Court considers the filings and rulings in Civil Action No. 21-2260 in the Southern District of Texas and Civil Action No. 21-20122 in the Southern District of Florida, which are both referenced in, and attached in part, to the Complaint.  The Court also takes judicial notice of the existence of court filings and rulings in litigation in other forums as cited above.

### III.    Analysis

Plaintiff's claims in Civil Action No. 21-2260 were dismissed with prejudice. In this case, Plaintiff contends the dismissal of those claims resulted from fraud on the court and intrinsic fraud committed by the Law Firm Defendants when they failed to disclose information to the court during a status conference in Civil Action No. 21-2260.

Defendants move for dismissal of Plaintiff's claims for fraud on the court and intrinsic fraud on the following bases:

- The claims are barred by attorney immunity;

- the Complaint does not allege facts sufficient to support a claim for fraud on the court;

- the intrinsic fraud claim relies on penal statutes that do not provide a private cause of action, and

- Plaintiff cannot prove he relied on any statement made by Defendants at the hearing.

ECF 9 at 9-16.  Defendants also move for dismissal of Plaintiff's defamation claim, arguing that:

- Plaintiff cannot state a claim for defamation because he has suffered no damages;

- the defamation claim is barred by the "libel-proof plaintiff doctrine;"

- Plaintiff cannot demonstrate the actual malice standard required for a "limited public figure" to prove defamation; and

- The allegedly defamatory statements consist of the expression of opinions which are protected by the First Amendment.

ECF 9 at 16-24.  The Court addresses Defendants' arguments for dismissal of the fraud on the court, intrinsic fraud, and defamation claims separately.  However, as an initial matter, the Court first addresses the defense of attorney immunity, which the Court concludes is applicable to the fraud and defamation claims brought against the Law Firm Defendants.

## 1. All of Plaintiff's claims against the Law Firm Defendants are subject to the defense of attorney immunity.

Defendants move to dismiss only Plaintiff's fraud claims based on attorney immunity.  However, in this particular case, the Court concludes that attorney immunity bars *both* the fraud and the defamation claims.  Even if that were not the

case, and as discussed in later sections, multiple independent grounds support the dismissal of the two fraud claims and the defamation claim.

The Texas Supreme Court has explained the attorney-immunity defense as follows:

> The common-law attorney-immunity defense applies to lawyerly work in 'all adversarial contexts in which an attorney has a duty to zealously and loyally represent a client,' but only when the claim against the attorney is based on 'the kind of conduct' attorneys undertake while discharging their professional duties to a client. Stated inversely, if an attorney engages in conduct that is not 'lawyerly work' or is 'entirely foreign to the duties of a lawyer' or falls outside the scope of client representation, the attorney immunity defense is inapplicable.

*Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022) (internal citations omitted). Whether Defendants are protected by attorney immunity for conduct alleged by Plaintiff to constitute fraud and defamation, is a legal question the Court determines from the facts alleged in the Complaint. *Id.* at 648.

As to the fraud allegations, the Complaint alleges the Law Firm Defendants committed fraud on the court and intrinsic fraud by failing to disclose to the court in Civil Action No. 21-2260 that their client in that case, MBFS, falsely represented to law enforcement officers in Mexico and Texas, that Plaintiff's vehicle was "somehow lost by Plaintiff in a robbery in Mexico." ECF 1 ¶ 18. Specifically, Plaintiff alleges that in Civil Action No. 21-2260 Judge Palermo asked counsel why the police in Laredo were storing the vehicle, and the Law Firm Defendants

responded with "We—I don't know," even though they knew that MBFS had falsely reported the car as stolen. *Id.* ¶¶ 29-30. Plaintiff further alleges that, had the Law Firm Defendants not failed to inform the court that, in order to process the repossession of the vehicle, their client MBFS had falsely reported the car as stolen, ". . . the outcome of Case No. 21-CV-02260 would have been different . . .." *Id.* ¶ 40. Plaintiff's allegations also contend that the Law Firm Defendants' "feigning ignorance of why Laredo, Texas police stored the vehicle was false," constitutes a violation 18 U.S.C. § 1001 and Texas Penal Code § 37.09(a)(1-2), and operated as intrinsic fraud because Plaintiff's reliance on the omission caused him to limit his arguments before the Court. *Id.* at ¶¶ 48-49.

With respect to defamation, Plaintiff alleges that Law Firm Defendant O'Connor defamed him in a March 11, 2023 email to Plaintiff, which was copied to Law Firm Defendant Manning and another McGlinchey Stafford employee, by writing:

> Mr. Moskovits,
>
> We are aware of your time at Penn. It's my understanding that the activities you participated in and, in fact, facilitated during your time there have a significant impact on the human brain. Had you elected to study at Penn instead of consume what I can only presume was copious amounts of the very drug you peddled, you may still be of sound mind. Unfortunately, from your emails, it is very clear that you are not well.

I hope that you get the help that you desperately need, but even you understand that this is a fruitless endeavor. Your claims are frivolous and your emails are only building up a case that you filed this suit for the purpose of harassment. Had you actually studied at Penn, you may realize what everyone else already knows. It's frankly sad at this point that you are unable or unwilling to come to that obvious realization.

ECF 1 ¶ 41.

"Attorney immunity is a 'comprehensive affirmative defense protecting attorneys from liability to non-clients.'" *Landry's Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 47 (Tex. 2021) (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481). "Even conduct that is 'wrongful in the context of the underlying suit' is not actionable if it is 'part of the discharge of the lawyers' duties in representing his or her client.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d at 481 (citations omitted). Because the focus in evaluating whether attorney immunity protects an attorney from liability to a non-client is "on the kind—not the nature—of the attorney's conduct," "merely labeling an attorney's conduct 'fraudulent' or 'defamatory' does not remove the conduct from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Id.* at 483 (citations omitted). Thus, to determine whether attorney immunity bars Plaintiff's claims, the court looks at whether the kind of conduct alleged to be fraudulent and defamatory is within the scope of legal representation, and involves "the office, professional training, skill, and authority of an attorney," not whether the attorney's conduct was wrongful. *See*

*Id*. at 484-85 ("Again, an attorney's conduct may be wrongful but still fall within the scope of client representation."); *Landry's Inc.*, 631 S.W.3d at 51-52 (noting that defamatory pre-suit Notice Letter sent to potential defendant was the product of lawyerly work for a client involving the office, professional training, skill, and authority of an attorney, but that sending of the same defamatory Notice Letter to the press was not).

Obviously, the in-court representations and omissions by the Law Firm Defendants in Civil Action No. 21-2260, the basis of Plaintiff's fraud claims, are acts "in the uniquely lawyerly capacity of one who possesses the office, professional training, skill, and authority of an attorney." *Landry's Inc.*, 631 S.W.3d at 51-52. Because *the kind* of conduct alleged to be fraudulent—appearing before, making arguments to, and answering questions from, the court—are the kinds of actions lawyers regularly undertake on behalf of their clients, Plaintiff's fraud claims are barred in their entirely by attorney immunity.

Plaintiff's assertion that the Law Firm Defendants' conduct violated criminal statutes found in 18 U.S.C. § 1001 and Texas Penal Code §37.09 does not remove the conduct from the protections of attorney immunity. *Taylor v. Tolbert*, 644 S.W.3d at 648 (holding that the kinds of actions lawyers undertake in representing a client, even if alleged to be criminal acts, are not perforce excluded from attorney immunity). Moreover, neither criminal statute identified by Plaintiff could apply to

the facts alleged in the Complaint.  Texas Penal Code § 37.09 relates to "tampering with or fabricating physical evidence," and 18 U.S.C. § 1001(b) expressly states the provision "does not apply to a party to a judicial proceeding, *or that party's counsel*, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding." (emphasis added).

Also, the facts alleged in the Complaint demonstrate that attorney immunity bars Plaintiff's defamation claims.  Again, a focus on the *kind* of conduct the attorney was engaging in—email communication with an opposing litigant—rather than the defamatory *nature* of the email communication, demonstrates that attorney immunity applies to the email statements. The facts alleged in the Complaint demonstrate that the email communication was sent to Plaintiff by O'Conner during the pendency of litigation between Plaintiff and O'Conner's client.  ECF 1 ¶¶ 39-41 (establishing that email was sent on March 11, 2023 and the appeal in Civil Action No. 21-2260 was pending from between February 17, 2023 and October 3, 2023 when this case filed).  O'Conner's client, MBFS, and Plaintiff (pro se) were opposing parties in Civil Action No. 21-2260 and the resulting appeal.  Communicating via email with an opposing party about active litigation constitutes conduct within the "office, professional training, skill, and authority of an attorney." *Landry's, Inc.*, 631 S.W. 3d at 51 (finding that sending of pre-suit notice letter to potential litigation opponent is the product of lawyerly work for a client involving

12

the "office, professional training, skill, and authority of an attorney"). In addition to the alleged defamatory statements, the email included the following statement: "Your claims are frivolous and your emails are only building up a case that you filed this suit for the purpose of harassment." ECF 1 at 41. While other statements in the email certainly lack the decorum and professionalism expected of an attorney, the sending of an email to a pro se party engaged in litigation with the attorney's client, expressing, among other things, the legal opinion that the party's claims are frivolous and the suit harassing—is the kind of conduct engaged in by attorneys for their clients. *Landry's, Inc.*, 631 S.W. 3d at 51(stating: "While the judicial-proceedings privilege applies specifically to liability for spoken or written words, the protections of attorney immunity apply more broadly to include 'actions' and 'conduct' engaged in by attorneys for their clients pursuant to the attorney's 'office professional training, skill, and authority.'"). That the communication, made during the course of litigation between Plaintiff and the Law Firm Defendants' client, was unprofessional or defamatory, does not deprive the conduct of the protections of attorney immunity. *See Cantey Hanger, LLP*, 467 S.W.3d at 481 (holding that "as a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." (citations omitted)).

Because the Law Firm Defendants' in-court representations and omissions, and the allegedly defamatory email communications sent to Plaintiff are the *kinds* of

work regularly performed by attorneys when representing their clients in ongoing litigation, regardless of the *nature* of the representations, omissions, or email communications (i.e., false, unprofessional, or even defamatory) the Law Firm Defendants are protected by attorney immunity from Plaintiffs fraud and defamation claims.

> **2.      In addition, and alternatively, Plaintiff's Complaint fails to state a claim against the Law Firm Defendants for fraud on the court or intrinsic fraud.**

The Fifth Circuit "recognizes a narrowly limited independent action to set aside a judgment for fraud on the court," which applies only where the fraud "defile[s] the court itself, or is fraud perpetuated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Lall v. Bank of New York Mellon as trustee to JPMorgan Chase Bank, N.A.*, 783 F. App'x 375, 379 (5th Cir. 2019) (citations omitted). "The Fifth Circuit has held that fraud on the court involves a high degree of misconduct." *Weatherford Int'l, Inc. v. Casetech Int'l, Inc.*, No. CIV.A.H-03-5383, 2005 WL 1745457, at *2 (S.D. Tex. July 25, 2005).

> To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion. Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, **such as nondisclosure to the court of facts allegedly**

14

> ***pertinent to the matter before it***, will not ordinarily rise to the level of
> fraud on the court.

*Id.* (quoting *Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir.1999) (quoting *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir.1996)) (emphasis added); *see also Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 220 (5th Cir. 2023) (holding that fraud on the court requires "egregious misconduct" and "willfulness to actively deceive."). The Complaint in this case alleges that Defendants did not disclose a fact to the court. According to Fifth Circuit precedent, the Complaint fails to allege the type of egregious conduct required to state a claim for fraud on the court.

Likewise, the Complaint fails to state an intrinsic fraud claim for which Plaintiff could seek a reversal of the final judgment in Civil Action No. 21-2260. The Supreme Court and the Fifth Circuit have made it clear that "intrinsic fraud, that is, fraudulent evidence upon which a judgment is based, is not grounds to set aside a judgment." *Browning v. Navarro*, 826 F.2d 335, 344 (5th Cir. 1987) (explaining *United States v. Throckmorton*, 98 U.S., (8 Otto) 61, 25 L.Ed. 93 (1878)). A judgment will be set aside for intrinsic fraud in an independent action only due to egregious misconduct by officers of the court as part of a "deliberately planned and executed scheme." *Id.* n.12. (discussing *Hazel-Atlas Glass Co. v. Hartford-Empire*

*Co.*, 322 U.S. 238 (1944)).   Plaintiff's Complaint does not allege the type of egregious misconduct required to state a claim for intrinsic fraud.

### 3. In addition, and alternatively, Plaintiff's defamation claim should be dismissed for failure to state a claim.

Again, Plaintiff alleges that O'Connor defamed him in a March 11, 2023 email to Plaintiff, copied to Defendant Manning and another McGlinchey employee, commenting that Plaintiff consumed "copious amounts of the very drug [he] peddled," and that he is not "of sound mind" and "not well."   ECF 1 ¶ 41.   A successful cause of action for defamation requires proof of the following elements:

> (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages (unless the statement constitutes defamation per se).

*D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).   Plaintiff's Complaint fails to state a claim for defamation because (1) it does not sufficiently allege defamation per se and therefore Plaintiff is not relieved of his burden to prove actual damages; and (2) it does not allege any actual damages resulting from the defamatory statements in the email sent to Plaintiff and two other McGlinchey Stafford employees.   Lastly, even if Plaintiff could allege the other elements of defamation per se or actual damages, the statements in the email do not meet the legal requirements for an actionable "false statement."

### a. The Complaint fails to allege either facts demonstrating defamation per se, or actual damages.

The Complaint does not allege actual damages caused by the March 11, 2023 email O'Conner sent to Plaintiff and two other McGlinchey Stafford employees. *See* ECF 1. In the absence of actual damages, Plaintiff cannot state a claim for defamation unless the email meets the standards for defamation per se. A statement constitutes defamation *per se* if it "injures a person in his office, profession, or occupation." *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013) (citation omitted). Defamation per se "involve[s] statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Id.* at 64-65. Examples of statements that meet the requirements of defamation per se are those "[a]ccusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct." *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015). A successful plaintiff in a defamation per se case may be awarded nominal damages in a "'trifling sum,' such as $1." *Hancock*, 400 S.W.3d at 65 (citation omitted).

Whether a statement is defamatory per se is a question of law for the court. *Id.* at 66. Plaintiff's Complaint fails to allege that the defamatory statements harmed Plaintiff in his office, profession, or occupation. In fact, the Complaint fails to allege any facts from which the Court could identify Plaintiff's office, profession, or

occupation.  For this reason, Plaintiff has failed to state a claim for defamation per se.  *See Bedford v. Spassoff*, 520 S.W.3d 901, 905 (Tex. 2017) (holding that under *Hancock*, a statement is defamatory per se only if it is disparaging of a particular quality valuable to the plaintiff's business or profession).

**b.  The Complaint fails to allege an actionable false statement.**

Even if the statements in O'Conner's email could meet the standard for defamation per se, thereby relieving Plaintiff of his burden to prove actual damages, Plaintiff cannot satisfy the first element of any defamation claim—a false statement. "[S]tatements that are not verifiable as false cannot form the basis of a defamation claim."  *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018) (citation omitted).  In addition, even if false, a statement is not actionable if "the entire context in which it was made discloses that it is merely an opinion masquerading as fact."  *Id*. (citation omitted).  Whether a statement is one of fact or opinion is a question of law for the court.  *Whitelock v. Stewart*, 661 S.W.3d 583, 599 (Tex. App.—El Paso 2023, pet. denied).   In making the determination whether a statement is one of actionable fact or opinion, the Court considers the statement "as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement."  *Id.*

The statement that Plaintiff sold drugs while a student at Penn is not false: Plaintiff verifies the truth of that statement in his Complaint.  ECF 1 ¶¶ 41, 42, 53.

Next, Defendant O'Connor's statement that he "presumes" Plaintiff ingested copious amounts of drugs and that O'Conner got the impression from Plaintiff's emails that Plaintiff is "not well," are not verifiable as false, and therefore cannot support a defamation claim. The context in which these statements were made, i.e., during the pendency of litigation that the Law Firm Defendants and their clients considered frivolous, and in response to an email from Plaintiff that Defendant O'Conner perceived as irrational, as well as the use of qualifiers such as "my understanding," "I can only presume," and "from your emails," demonstrate that the statements regarding Plaintiff's mental health are O'Conner's opinions, not statements of fact. *See Whitelock*, 661 S.W.3d at 599-600 (holding that statements regarding character, including that the plaintiffs "were total idiots," and "nothing but liars and a bunch of frauds" were the type of "loose, figurative or hyperbolic language that is immunized from defamation claims."); *see also Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *16 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (holding that calling someone a "sexual predator" is an opinion, not an actionable statement of fact).

### c. The Court need not address Defendants' additional bases for dismissal of the defamation claim.

Defendants also argue that:

- Plaintiff's defamation claim is barred by the "libel-proof plaintiff" doctrine because his drug conviction had already damaged his reputation;

- Plaintiff is a "limited public figure" due to media coverage of the drug conviction and thus must allege and prove actual malice; and

- the statements of opinion in the March 11, 2023 email are protected by the first amendment.

ECF 9 at 19-24.  The Court need not address these arguments because, in addition and alternatively to attorney immunity, Plaintiff's failure to meet the standards for defamation per se or for an actionable false statement are dispositive.

### 4. Granting Plaintiff leave to amend would be futile.

Plaintiff's claims related to the repossession and sale of the vehicle were litigated to final judgment in Civil Action No. 21-2260.  Claims against these Defendants for their actions in Civil Action No. 21-2260 are barred by attorney immunity.  Under the circumstances, the Court recommends that Plaintiff's claims be dismissed with prejudice, without leave to file an Amended Complaint. *See Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 883 (5th Cir. 2016) (holding that although a pro se litigant should generally be afforded an opportunity to amend, denial of leave to amend is justified when amendment would be futile (internal citations omitted)); *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (holding that leave to amend is not required if the plaintiff has already pleaded his best case).

## IV.    Conclusion and Recommendation

For the reasons discussed above, the Court RECOMMENDS that Defendants' Motion to Dismiss (ECF 9) be GRANTED and Plaintiff's claims be DISMISSED WITH PREJUDICE.

The individual Defendants initially moved to dismiss under Rule 12(b)(5) as well as Rule 12(b)(6).  ECF 9.  After the initial conference on February 12, 2024, Defendants Manning and O'Conner waived the service of summons.  ECF 22; ECF 23.  Thus, the Rule 12(b)(5) motion is moot.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on May 01, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge